UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| SYSCO INDIANAPOLIS LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| Counter Defendant | ) | |
| | ) | |
| v. | ) | No. 1:22-cv-00131-JPH-KMB |
| | ) | |
| LOCAL 135, INTERNATIONAL | ) | |
| BROTHERHOOD OF TEAMSTERS, | ) | |
| | ) | |
| Defendant, | ) | |
| Counter Claimant | ) | |
| | ) | |

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Sysco Indianapolis, LLC filed this action against Teamsters Local 135 ("the Union") seeking a declaratory judgment that the Union's January 8, 2019 grievance is not subject to arbitration under their collective bargaining agreement. The Union has filed a counterclaim seeking a declaratory judgment that the grievance must be submitted to arbitration under the CBA and asking the Court to compel arbitration. The parties have filed cross-motions for summary judgment. For the reasons that follow, Sysco's motion for summary judgment is **GRANTED**, dkt. [24], and the Union's motion for summary judgment is **DENIED**. Dkt. [19]. Sysco's motion to dismiss the counterclaims is **DENIED as moot**. Dkt. [15].

I.
**Facts and Background**

The following material facts are undisputed unless otherwise noted.

**A. Bargaining history**

1

Since 2000, the Union and Sysco have been signatories to five successive collective bargaining agreements.  Dkt. 19-1 at 4 (2000 CBA), 36 (2003 CBA), 70 (2008 CBA); dkt. 19-2 at 7 (2013 CBA); dkt. 24-1 (2018 CBA).  From 2000 until 2013, Article 18 of the CBA—titled "Pensions"—obligated Sysco to contribute to the "Central States, Southeast and Southwest Areas Pension Fund" on behalf of covered union employees.  Dkt. 19-1 at 1–2 ¶4 (Joint Stipulation of Facts); 19–20 (2000 CBA), 52–53 (2003 CBA), 86–86 (2008 CBA).  In those CBAs, Article 18 contained detailed information about Sysco's obligation to make contributions on behalf of Union members, including how other terms of the CBA may affect that obligation.  *See e.g.,* dkt. 19-1 at 20 ("Contributions to the Pension Fund must be made for each week on each regular or extra employee even though such employee may work only part-time under the provisions of this Agreement, . . . .").

Before negotiating the 2013 CBA, Sysco proposed to change Article 18 so that Sysco would stop contributing to the Fund but would instead "ensure regular full-time employees of Sysco Indianapolis the opportunity to enroll to participate in the Sysco Corporation Retirement Plan."  Dkt. 24-2 at 2 ¶3 (Munn Decl.) ("the Plan").[1]  At the negotiation session, Sysco described the Plan to the Union's representatives, including the Plan's "Supplemental Employee Retirement Benefit" (SERB), which provided "an additional $500 monthly payment for bargaining unit employees who retired with twenty years of service

---

[1] While Sysco argues that the bargaining history of the 2013 CBA is not material to the present dispute, dkt. 25 at 4, it provides helpful context.

between the ages of 55 and 65" and would be paid up to age 65.  Dkt. 19-2 at 3

¶6 (Sperring Decl.).[2]  The union members relied on that representation when

they voted to ratify the 2013 CBA.  *Id.* at 3 ¶7.  The new Article 18 in the 2013

CBA provided:

> ### ARTICLE 18 - PENSIONS
>
> This new labor agreement terminates participation by the Employer and the Union in the Central States, Southeast and Southwest Areas Pension Fund.  Accordingly, the Employer is no longer obligated to contribute to or participate in said Fund.
>
> All regular full time employees covered by this Agreement shall be eligible for enrollment in the Sysco Corporation Retirement Plan and the Sysco Corporation Employees' 401(k) Plan, subject to all rights, terms and conditions of this Plan including any and all additions, deletions or modifications made to any and all terms, conditions and benefits of this Plan made during the term of this Agreement.

Dkt. 19-2 at 15 (2013 CBA).

Soon after the 2013 CBA went into effect, the Union's steward, John

Seward, "and all bargaining unit employees" filed a grievance alleging that

Sysco had violated Article 18 "and all [provisions] that may apply," by requiring

retirees to meet extra criteria that had never been explained to the bargaining

unit to be eligible for the SERB.  Dkt. 19-1 at 2 ¶5; 27 (2013 Grievance).  The

2013 Grievance was upheld by the Joint Grievance Committee under the CBA's

grievance procedure.  Dkt. 19-1 at 2 ¶7.  The Union then filed a lawsuit against

Sysco for enforcement of the Committee's decision.  *Teamsters Local Union No.*

*135 v. Sysco Indianapolis, LLC,* 1:16-cv-00176-WTL-DKL, docket no. 44 at 6.

In that litigation, Sysco took the position that the grievance was not

arbitrable because the parties "did not agree to arbitrate matters relating to

---

[2] Sysco disputes how the SERB was described at the negotiation session, dkt. 12–13, so the Court recites the evidence in the light most favorable to the Union.

retirement benefits, including the SERB payments [Local 135] seeks on behalf of its members."  *Id.* at 7.  The Court did not resolve the issue of arbitrability but enforced the Committee's decision on the basis that Sysco failed to timely move to vacate it.  *Id.* at 11–12.

### B. 2018 CBA

The parties began negotiating the 2018 CBA while the grievance and corresponding litigation over the 2013 CBA were pending.  Dkt. 24-1 at 1–2 ¶¶3–4.  The Union proposed adding the following language to Article 18 "to memorialize and clarify what had already been agreed to":

> **ARTICLE 18 - PENSION**
> No bargaining unit employee shall be subjected to a freeze of any kind.  (I.E. years of service)
> Reinstate the agreed to, in 2013, extra five hundred dollars ($500) in addition.

Dkt. 24-1 at 5; dkt. 28-1 at 2 ¶5 (Sperring Supp. Decl.).  Sysco's representative responded that Sysco would "not agree to put any pension benefits, including the SERB, into the CBA," dkt. 24-1 at 2 ¶5, and "did not want to negotiate over the SERB because it was being litigated, but that Sysco would comply with the decision."  Dkt. 28-1 at 2 ¶5.  The Union made two further attempts to add language referring to the SERB into the 2018 CBA, each of which Sysco rejected.  Dkt. 24-1 at 2–3 ¶¶6–9.

When finalized, Article 18 of the 2018 CBA provided:

**ARTICLE 18 - RETIREMENT**

The previous labor agreement terminated participation by the Employer and the Union in the Central States, Southeast and Southwest Areas Pension Fund. Accordingly, the Employer is no longer obligated to contribute to or participate in said Fund.

All regular full time employees covered by this Agreement hired before 5/15/2018 shall be eligible for enrollment in the Sysco Corporation Retirement Plan and the Sysco Corporation Employees' 401(k) Plan, subject to all rights, terms and conditions of this Plan including any and all additions, deletions or modifications made to any and all terms, conditions and benefits of this Plan made during the term of this Agreement.

Dkt. 10-2 at 15.

### C. The Grievance regarding the 2018 CBA

John Smith, the first employee who would be SERB-eligible during the term of the 2018 CBA, retired May 2018. Dkt. 19-1, ¶10. On January 8, 2019, the Union's steward, John Seward, filed a grievance "on behalf" of "John Smith and all future retirees" alleging that Sysco violated Article 18 of the 2018 CBA "and all [provisions] that may apply" by not providing the extra $500 per month SERB. Dkt. 10-1 at 1 ("the Grievance").

Article 9 of the 2018 CBA provides:

> A grievance is defined to be any controversy, complaint or dispute arising as to the interpretation or application of or the compliance with any provisions on this Agreement.

Dkt. 10-2 at 10 (2018 CBA, Art. 9). Article 9 also outlines a 5-step grievance procedure. *Id.* at 10–11. Step five provides that, "[i]n the event the grievance is not resolved" in the first four steps, "either the Union or the Company . . . may request" that the grievance be submitted to arbitration. *Id.* at 11. The arbitrator "shall have no authority to add to, detract from, alter, amend or modify any provision of this Agreement or impose on any party hereto a

5

limitation or obligation not explicitly provided for in this Agreement or to alter any wage rate or wage structure."  *Id.*  "The decision of the arbitrator shall be final and binding upon all parties."  *Id.*

The Grievance was not resolved during the first four steps of the grievance procedure, so the Union requested arbitration and the parties selected a neutral arbitrator.  Dkt. 19-1 at 2–3 ¶¶12–14.  The hearing date was rescheduled several times, and in January 2022, Sysco informed the Union that it did not intend to arbitrate the Grievance.  *Id.* at 3 ¶¶15–16.

### D. Procedural history

Sysco then filed this suit seeking a declaratory judgment that the Grievance is not arbitrable under the 2018 CBA.  Dkt. 1.  The Union filed a counterclaim asking the Court to find the grievance arbitrable and to compel arbitration.  Dkt. 10.  While Sysco initially moved to dismiss the counterclaims, dkt. 15, the parties have since filed cross-motions for summary judgment which incorporate the arguments raised in the briefing on the motion to dismiss, *see* dkts. 21, 25, 28, 33.  Therefore, the Court consolidates its consideration of all pending motions into this order and applies the summary judgment standard throughout.

## II.
## Applicable Law

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party must inform the court "of the basis for its motion" and specify evidence

6

demonstrating "the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party meets this burden, the nonmoving party must "go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial."  *Id.* at 324.

In ruling on cross motions for summary judgment, the Court takes the motions "one at a time," viewing and reciting the evidence and drawing all reasonable inferences "in favor of the non-moving party."  *American Family Mut. Ins. v. Williams*, 832 F.3d 645, 648 (7th Cir. 2016).  However, here, even when all the evidence is viewed in the light most favorable to the Union, Sysco is entitled to summary judgment.

### III.
### Analysis

Sysco argues that the Grievance is not subject to arbitration under the 2018 CBA.  Dkt. 25 at 15–17; dkt. 33 at 10–16.[3]  The Union argues that, under the 2018 CBA's broad arbitration clause, the Grievance must be submitted to arbitration.  Dkt. 21 at 8–16; dkt. 23 at 7–10.

Four key principles guide the analysis of arbitrability.  "First and foremost, it is the parties' contract that determines the duty to arbitrate."  *United Natural Foods, Inc. v. Teamsters Local 414*, 58 F.4th 927, 933 (7th Cir. 2023).  "Arbitration is strictly a matter of consent and thus is a way to resolve

---

[3] Because this suit does not involve claims of individual retirees attempting to recover benefits under the pension plan, the Court does not consider Sysco's argument that such a claim would be subject to ERISA's exhaustion requirement.  Dkt. 25 at 28–33; *see also Teamsters Local Union 135 v. Sysco Indianapolis, LLC*, No. 1:16-cr-00176-WTL-DLP, 2016 WL 6876578, *2 (S.D. Ind. Nov. 22, 2016) (rejecting Sysco's exhaustion argument).

those disputes—*but only those disputes*—that the parties have agreed to submit to arbitration."  *Id.* (quoting *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299 (2010) (emphasis in *Granite Rock*)).  Second, substantive arbitrability, namely "whether a collective bargaining agreement creates a duty for the parties to arbitrate the particular grievance—is undeniably an issue for judicial determination."  *AT&T Techs. v. Commc'ns. Workers of Am.*, 475 U.S. 643, 649 (1986).

Third, "a court must determine whether a claim is subject to arbitration without consideration of the underlying merits of the case."  *United Natural Foods*, 58 F.4th at 934; *United Steel v. TriMas Corp.*, 531 F.3d 531, 535–36 (7th Cir. 2008) (a court's role in a dispute over arbitrability of a grievance is "essentially that of a 'gatekeeper.'").  Finally, courts must be "mindful that both the law and public policy strongly favor arbitration" and that the "party seeking arbitration is entitled to the benefit of the doubt."  *IBEW Local 2150 v. NextEra Energy Point Beach, LLC*, 762 F.3d 592, 594 (7th Cir. 2014).  In short, ambiguity must be resolved in favor of arbitration.  *United Natural Foods*, 58 F.4th at 934; *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83 (1960).

## A. Scope of the arbitration clause

Determining whether the parties intended a dispute to be arbitrable begins with the language of the 2018 CBA's arbitration clause.  *TriMas*, 531 F.3d at 536 ("The scope of the arbitration clause is established by the text of the arbitration clause itself.").  "Where the arbitration clause is broad, we

presume arbitrability of disputes." *NextEra*, 762 F.3d at 594.  That is, the

court will compel arbitration "unless it may be said with positive assurance

that the arbitration clause is not susceptible of an interpretation that covers

the asserted dispute." *Id.*

The 2018 CBA's arbitration clause, Article 9, is broad: "A grievance is

defined to be any controversy, complaint, or dispute arising as to the

interpretation or application of or the compliance with any provision on this

Agreement."  Dkt. 10-2 at 8.  Article 9 then sets forth a five-step grievance

procedure.  *Id.*  Any grievance is arbitrable if not resolved before Step 5—there

are no express exclusions.  *Id.*  "[T]his language is of a type that [the Seventh

Circuit has] referred to, in the past, as broad enough to trigger the

presumption of arbitrability."  *NextEra*, 762 F.3d at 594–95 (collecting cases).

Therefore, the presumption of arbitrability applies here.

### B. Most forceful evidence

Once the presumption of arbitrability attaches, the party resisting

arbitration must either (1) show that the CBA expressly excludes the issue

from arbitration or (2) produce "most forceful evidence of a purpose to exclude

the claim from arbitration." *TriMas*, 531 F.3d at 536.  Sysco does not argue

that the CBA expressly excludes arbitration of pension benefits, but contends

that there is "most forceful evidence" that the parties did not intend to arbitrate

pension-related disputes under the 2018 CBA.  Dkt. 25 at 20–23.  The Union

responds that no such "forceful evidence" exists.  Dkt. 28 at 6.

The Seventh Circuit has identified several factors that may show "most forceful evidence" that the parties intended to exclude a dispute from arbitration: (1) the language of the collective bargaining agreement; (2) the language of the pension plan; (3) the bargaining history of the parties; and (4) the independence of the administration of the Plan from the administration of the collective bargaining agreement. *Printing Specialties & Paper Prods. Union Local 680 v. Nabisco Brands, Inc.,* 833 F.2d 102, 104 (7th Cir. 1987); *Karl Schmidt Unisia, Inc. v. United Auto Workers*, 628 F.3d 909, 914–16 (7th Cir. 2010).

In *Nabisco*, the Seventh Circuit considered whether a dispute regarding early retirement benefits in a pension plan was arbitrable under the parties' collective bargaining agreement.  833 F.2d at 103.  The CBA "included a passing reference to the Company pension plan that state[d] 'The Company agrees to continue its present Pension Plan in full force and effect for the term of the agreement." *Id.*  The pension plan had its own dispute resolution procedure.  *Id.*  The dispute arose when, after Nabisco sold the plant where they worked, several union members applied for the early retirement benefit but had their claims denied because the sale did not trigger benefits under the plan.  *Id.*  The union "filed a grievance under the [CBA] contesting Nabisco's denial of early retirement benefits on behalf of the union members" but Nabisco argued that the CBA did not cover the "disputed pension benefits." *Id.*  The parties' CBA provided for arbitration of "any grievance or misunderstanding involving wages, hours or working conditions." *Id.*

The Seventh Circuit agreed with Nabisco that, even though the CBA had a broad arbitration clause and the presumption of arbitrability applied, the CBA did not require arbitration of the pension-related grievance. *Id.* at 104–05. The Court began with the language of the CBA—finding that it "did not incorporate the provisions of the Pension Plan but merely stated that Nabisco would keep the Pension Plan in full force and effect." *Id.* at 105. This "mere mentioning" of the plan was an "insufficient reason to construe" it as "part and parcel" of the CBA. *Id.* Next, the Court noted that no pension plan terms were included in the CBA as result of negotiation: "In fact, evidence to the contrary establishes that the Union submitted proposed changes regarding the Pension Plan during negotiations with Nabisco, but Nabisco rejected these proposals." *Id.* The Court also considered that the pension plan was not the result of collective bargaining; rather it was an independent, separate, and "all inclusive" plan that covered Nabisco's employees nationwide and pre-existed the bargaining relationship of the union and Nabisco. *Id.* Taken together, the Court found that "this forceful evidence clearly reflects that the disputed Pension Plan benefits were never intended to be [arbitrable] between the parties." *Id.*

Here, the 2018 CBA broadly provides that covered employees "shall be eligible for enrollment in the Sysco Corporation Retirement Plan." Dkt. 10-2 at 15 (Article 18). The Plan was not created by the CBA and the CBA does not incorporate the terms of the Plan or any specific Plan benefit. The CBA simply makes Union members eligible to enroll in the independent Sysco retirement

plan.  No "interpretation or application of . . . any provision of the CBA" is

necessary to reach this conclusion.  *See* Dkt. 10-2 at 15 (2018 CBA, Article 9).

Instead, the criterion for eligibility is straightforward and, unlike the pre-2013

Article 18, does not require reference to any other provisions of the CBA.  Thus,

the "mere mentioning" of the Plan does not make it "part and parcel" of the

CBA.  *Nabisco*, 833 F.2d at 105.

Next, the parties' bargaining history demonstrates that they did not

intend for disputes related to the Retirement Plan to be arbitrable under the

2018 CBA.  The Union argues that the SERB became an implied provision of

the 2013 CBA because during negotiations Sysco made representations

regarding the SERB and the Union relied on those representations.  Dkt. 21 at

4; dkt. 19-2 at 3 (Sperring Decl. at ¶¶5–8).  Therefore, the Union argues,

disputes about the SERB are subject to arbitration.  Dkt. 21 at 15.  But the

issue presented in this case relates to a grievance filed under the 2018 CBA,

not the 2013 CBA.  The undisputed bargaining history of the 2018 CBA shows

that the Union sought to incorporate the SERB into the 2018 CBA three times,

but that Sysco refused each time.  Dkt. 24-1 at 2–3 (Richardson Decl. at ¶¶4–

9).

Finally, the undisputed designated evidence shows that the Plan is

entirely separate and independent from the 2018 CBA.  The Plan is broader

than the CBA as its coverage extends well beyond members of the Union—

covering both union and non-union employees in other parts of the country.

Dkt. 15-2 at 1–6, 32–45.  And the Plan existed for 60 years before the Union's

members became eligible for enrollment.  Dkt. 15-2 at 8.  Moreover, the Plan is

governed by separate rules and dispute resolution procedures independent of

those that govern the CBA.  Dkt. 15-1 at 83–86 (Article X "Claim Procedures");

dkt. 15-2 at 8, 32–45.[4]  The question of what specific benefits an employee is

entitled to receive depends on the terms of the Plan and does not require

reference to or interpretation of any express provision of the 2018 CBA.

Viewed collectively, these facts are "forceful evidence" that Plan benefits

"were never intended to be [arbitrable] between the parties under the provisions

of the" 2018 CBA.  *Nabisco*, 833 F.2d at 105.

The Union nonetheless argues that the Seventh Circuit's decision in *Karl

Schmidt* controls.  Dkt. 21 at 13–17.  There, the union alleged that the

employer violated the CBA's "Thirty and Out" provision, which "provide[d]

eligibility for supplemental retirement benefits to an employee once he has

reached the age and seniority requirements in the provision."  628 F.3d at 912.

Like in *Nabisco*, the CBA did not incorporate all the terms of the pension plan,

which was independent and pre-existed the bargaining relationship.  *Id.* at

915–16.  But unlike *Nabisco*, the CBA itself provided for the "Thirty and Out"

benefit "to an employee once he has reached the age and seniority

requirements in the provision."  *Id.* at 915.  Therefore, resolving the union's

allegation "depend[ed] on the terms of § 13.01 of the CBA" and would require

interpretation and application of an express provision of the CBA.  *Id.* at 915–

---

[4] Sysco also designated evidence that, during the term of the 2013 CBA, the Union pursued at least one claim for the SERB for a retiree under the terms of the Plan.  *See* dkt. 24-3.

16; *see also Exelon Generation Co., LLC v. Local 15, Intern. Broth. of Electrical Workers*, 540 F.3d 640, 642 (7th Cir. 2008) (finding that a grievance relating to medical benefits was arbitrable where "[t]he terms of the retiree medical benefits have been memorialized in Memoranda of Agreement Reached in Collective Bargaining . . . which supplemented and became part of the CBA.").

Here, the 2018 CBA makes only a "passing reference" to the Plan as a whole, without identifying any "specific right" conferred by the Plan, much less the SERB that the Union seeks to enforce.  That makes this case similar to *Nabisco* and different than *Karl Schmidt*.  And the record makes clear that the 2018 CBA's language was not a contractual oversight—the Union attempted at least three times to include SERB language in the 2018 CBA, but this was rejected by Sysco each time.  *See Nabisco*, 833 F.2d at 105 ("In this case we might reach a different result if Nabsico and the Union had . . . made their agreement a part of the collective bargaining agreement."); *United Natural Foods*, 58 F.4th at 933 ("Arbitration is strictly a matter of consent and thus is a way to resolve those disputes—*but only those disputes*—that the parties have agreed to submit to arbitration.").

The Union nevertheless argues that, because the Grievance says that nonpayment of the SERB was a violation of "Article 18 and all [provisions] that may apply," it must be arbitrable.[5]  Dkt. 28 at 1.  But the language of the

---

[5] The Union generally argues that, alternatively to Article 18, its claim could be maintained as a violation of the 2018 CBA's "Maintenance of Standards" clause and possibly other provisions.  Dkt. 21 at 16.  But the Union's arguments on this point are perfunctory and underdeveloped.  *Id.*  Therefore, Union has waived its argument that that the failure to arbitrate is a violation of the Maintenance of Standards clause or

CBA—not the language of the grievance—determines whether a grievance is subject to arbitration.  *See Nabisco*, 833 F.3d at 105 (grievance not arbitrable where the CBA did not incorporate plan terms); *Karl Schmidt*, 628 F.3d at 915 (grievance arbitrable where the CBA included the "specific right" to the "Thirty and out" benefit); *Exelon*, 540 F.3d at 647 (grievance arbitrable where the medical benefits "supplemented and became part of the" CBA); *see also United Natural Foods*, 58 F.4th at 933 ("it is the parties' contract that determines the duty to arbitrate.").  Here, the language of the bargained-for 2018 CBA only contains a "passing reference" to the Plan, but "did not incorporate the provisions" of the Plan, including the SERB.  *See Nabisco*, 833 F.2d at 105.

Finally, the Union argues that finding the Grievance not arbitrable would amount to a ruling on the merits.  Dkt. 28 at 6.  But the Court's ruling does not address the merits presented by the Grievance, that is, whether Sysco breached an obligation to provide the SERB.  Instead, the only question resolved here is whether a grievance about a benefit available under the Retirement Plan—the SERB—must be arbitrated under the 2018 CBA.  "[W]hether a collective bargaining agreement creates a duty for the parties to arbitrate the particular grievance—is undeniably an issue for judicial determination."  *AT&T*, 475 U.S. at 649.

In sum, the presumption of arbitrability in this case does not require arbitration of the Grievance because Sysco has met its burden of

---

any other provision of the CBA.  *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991).

demonstrating there is "most forceful evidence" that the pension benefits were

not intended to be arbitrable under the 2018 CBA.  Like in *Nabisco*, the result

may have been different if the disputed Plan term was "included in the

collective bargaining agreement as a result of negotiation", 833 F.2d at 105,

but it was not.

## IV. Conclusion

Sysco's motion for summary judgment is **GRANTED**, dkt. [24], and the

Union's motion for summary judgment is **DENIED**, dkt. [19].  Sysco's motion to

dismiss the counterclaims, dkt. [15], is therefore, **DENIED as moot**.[6]

Because the January 8 Grievance filed by Local 135 is not arbitrable

under the 2018 CBA, Sysco is entitled to a declaratory judgment that

Defendant may not compel Plaintiff to arbitrate the January 8 Grievance.

Judgment shall issue by separate entry.

**SO ORDERED.**

 Date: 3/21/2023

James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

All electronically registered counsel

---

[6] Because the Court finds that the grievance is not arbitrable under the 2018 CBA, it
does not consider whether the Union would have standing to compel arbitration on
behalf of retirees.  *See Exelon*, 540 F.3d at 647–48 (resolving arbitrability before
addressing whether the union may pursue the grievance on behalf of retirees).